UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.B., a minor, by MONIQUE BENJAMIN, individually, and as parent and next friend of J.B., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES INC., <br><br> Defendants. | Case No. 12-cv-385 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs brought suit against Defendant, Abbott Laboratories Inc., in multiple state-court actions (collectively, "Depakote Cases"), alleging personal injuries on behalf of children who developed birth defects *in utero* as a result of their mothers' ingestion of the drug Depakote, a drug sold by Abbott. Five Depakote Cases, involving 69 Plaintiffs, were removed to the Northern District of Illinois from the Circuit Court of Cook County, Illinois, pursuant to 28 U.S.C. §§ 1332(d), 1446.[1] Eleven Depakote Cases, involving 232 Plaintiffs[2], were removed from the Circuit Courts of Madison and St. Clair Counties to the Southern District of Illinois. Plaintiffs opposed the removal of those actions to federal court.

Plaintiffs' motion for remand to state court was denied on May 9, 2012, in this

---

[1] Four Depakote Cases were removed from the Circuit Court of Cook County and docketed under this case number, 12-cv-385, in the Northern District. A related case, *Clay v. Abbott Laboratories Inc.*, Case No. 12-cv-3824, was removed to the Northern District on May 17, 2012.

[2] Cases involving 17 Plaintiffs were also filed directly in the Southern District, for a total of 249 cases.

District.  The Southern District granted the remand sought by those plaintiffs.  The Seventh Circuit affirmed the Northern District Court's decision to deny remand and reversed the Southern District, holding that the removal of the Depakote Cases in both the Northern District of Illinois and the Southern District of Illinois was proper.  *See In re Abbott Laboratories, Inc.*, 698 F.3d 568, 570 (7th Cir. 2012).

Now, Plaintiffs move to transfer venue from the Northern District of Illinois to the Southern District of Illinois, pursuant to 28 U.S.C. § 1404(a).  Abbott opposes this motion and separately moved, in the Southern District of Illinois, to transfer those cases to the Northern District; that motion is also pending.  (Pls.' Mot. at 2 n.3.)  Plaintiffs' Motion to Transfer has been fully briefed and is ripe for ruling.

**LEGAL STANDARD**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court must consider a variety of statutory factors in light of all the circumstances on a case-by-case basis. *See Coffey v. Van Dorn Works*, 796 F.2d 217, 219 (7th Cir. 1986) (*Coffey*). The movant bears the burden of establishing that the transferee forum is clearly more convenient; the decision lies in the sound discretion of the trial judge. *Id.* The court may consider facts presented by way of "affidavit, deposition, stipulation, or other relevant documents." *Allstate Ins. Co. v. Mathison,* No. 02 C 418, 2002 WL 1396951, at *5 (N.D. Ill. June 26, 2002) (quoting *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983)).

**ANALYSIS**

A party seeking transfer must show the following: (1) that venue is proper in both the transferor and the transferee courts; (2) that transfer is for the convenience of the parties and witnesses; and (3) that transfer is in the interest of justice. 28 U.S.C. § 1404(a); *Coffey*, 796 F.2d at 219.

*Venue in the Transferor and Transferee Courts*

This first requirement is in dispute. Plaintiffs allege venue is proper in both the Northern and Southern Districts. (Pls.' Mot. at 2.) However, Abbott contends that if Plaintiffs sued Abbott in the Southern District, venue would have been improper.[3]

---

[3] Abbott previously challenged venue in the St. Clair County court; that state court determined Abbott was a resident of St. Clair County and found that venue was

3

(Def.'s Resp. at 1-3.) Therefore, Abbott reasons, the Motion to Transfer should be denied, as Plaintiffs cannot show that venue is proper in the Southern District, as Plaintiffs could not have brought their actions there. (*Id.*)

Venue is proper in a district in which a defendant resides. 28 U.S.C. § 1391(b)(1). For purposes of venue, a defendant corporation resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391(c)(2). To establish personal jurisdiction, defendant must have sufficient minimum contacts with the forum. The contacts may or may not be related to the underlying facts of the action. *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir. 2006) (quoting *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002)). "Contacts related to the subject matter of the lawsuit may give rise to specific personal jurisdiction, that is, jurisdiction over the person for a case arising from those contacts." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (*Helicopteros*)). "When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Id.* (citing *Helicopteros*, 466 U.S. at 414-15). "[T]he threshold for general jurisdiction is quite high because 'the contacts must be sufficiently extensive and pervasive to approximate physical presence.'" *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (quoting *Tamburo v. Dworkin*, 601

---

proper. (Pls.' Mot. at 4 n.5.)

F.3d 693, 701 (7th Cir. 2010)).

General Personal Jurisdiction

Abbott argues that it could not have been sued by Plaintiffs in the Southern District because neither specific nor general personal jurisdiction could be established there.[4] In their Reply, Plaintiffs counter that Abbott is subject to general personal jurisdiction in the Southern District; that is, that Abbott could reasonably anticipate being haled into court in the Southern District. (Pls.' Reply at 2.) As the Seventh Circuit recently explained, "[g]eneral jurisdiction over a defendant, which means that the defendant can be required to answer any claim that arose anywhere in the world, requires that the defendant be 'essentially at home' in the forum." *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011) (*Goodyear*)).

Abbott contends the United States Supreme Court's decision in *Goodyear* created a "new standard to govern the exercise of general jurisdiction over a corporation," that general jurisdiction exists "*only* in a forum where the corporation is 'essentially at home.'" (Def.'s Resp. at 7) (emphasis added). This narrow reading of the *Goodyear* opinion ignores the Supreme Court's reiteration of the "continuous and systematic" connections requirement, established in the *International Shoe* decision. *Goodyear*, 131 S. Ct. at 2851 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

---

[4] In Abbott's Motion to Transfer filed in the Southern District, Abbott states it does not challenge venue, because the cases were removed from the Circuit Courts of St. Clair and Madison Counties. (Pls.' Mot. Ex. A at 8.)

Abbott's reliance on *Goodyear* also ignores readily operative facts in that case clearly distinguishable from those present here. The *Goodyear* suit arose from a tire malfunction, causing personal injury in France. *Goodyear*, 131 S. Ct. at 2851. The tire manufacturers named as defendants included Goodyear Luxembourg Tires, SA; Goodyear Lastikleri T.A.S. (Goodyear Turkey); and Goodyear Dunlop Tires France, SA (Goodyear France). *Id.* at 2851-52. Those three defendants are indirect subsidiaries of Goodyear USA, an Ohio corporation also named as a defendant in the suit, and those subsidiaries primarily produce tires for the European and Asian markets. *Id.* The *Goodyear* decision determined that a foreign subsidiary of a U.S. corporation lacked an adequate connection to the forum at issue, North Carolina, for the exercise of general jurisdiction. *Goodyear*, 131 S. Ct. at 2850-51. There, the Supreme Court noted that the foreign subsidiaries "have no place of business, employees, or bank accounts in North Carolina [the venue at issue]. They do not design, manufacture, or advertise their products in North Carolina. And they do not solicit business in North Carolina . . ." or sell or ship products to customers there. *Id.* at 2852. A small fraction of the foreign subsidiaries' tires were distributed in the United States, but those tires were distributed by other Goodyear USA affiliates. *Id.* The foreign subsidiaries' connections to the forum state of North Carolina were so attenuated in *Goodyear*, the Supreme Court found they fell "far short of the 'continuous or systematic general business contacts' necessary to empower North Carolina to entertain suit against them on claims unrelated to anything that connects them to the State." *Id.* at 2857 (quoting *Helicopteros*, 466 U.S. at 416). While the Supreme Court indicated general jurisdiction exists where contacts with a

forum are so continuous and systematic to "render [a corporation] essentially at home in the forum State," the Supreme Court did not replace or redefine the well-established standard for establishing general jurisdiction. *Goodyear*, 131 S. Ct. at 2851.

In contrast to the foreign subsidiaries in *Goodyear*, Abbott has 46 employees who sell and market Abbott's products directly in the Southern District. (Def.'s Resp. Ex. 3 ¶ 8.) Abbott also sells pharmaceutical and medical products directly to customers in the Southern District. (*Id.*) There is no suggestion the product was not intended primarily for sale outside of the Southern District. Rather, Abbott's products, including the product at issue, Depakote, have been prescribed for use in the Southern District. (Pls.' Reply, Ex. A ¶¶ 10-11.) Moreover, Abbott's sales representatives provide information regarding pharmaceuticals and medical products to health care practitioners in the Southern District. (Pls.' Reply, Ex. B Interrogatory No. 8.) By these facts, it is apparent Abbott maintained regular, continuous business contacts in the Southern District. By soliciting business, selling and marketing products, and employing a sales team in the Southern District, Abbott could reasonably anticipate being haled into the District. Therefore, Abbott is subject to general personal jurisdiction in the Southern District of Illinois, and venue would have been proper in both the Southern and Northern Districts of Illinois.

*Convenience of the Parties and Witnesses*

In evaluating the convenience of the parties and witnesses, courts in this district consider five factors: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties litigating in the respective forums; and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

A plaintiff's choice of forum is generally given substantial weight, particularly when the chosen forum is the plaintiff's home forum. *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007). That choice is entitled to less deference, however, "when another forum has a stronger relationship to the dispute, when the forum of plaintiff's choice has no significant connection to the site of material events, or in the context of nationwide class actions." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007) (citations omitted). In a mass action like this, the factor of the choice of forum is discounted, though not disregarded. *Id.* at 857. However, as noted above, of the 318 Plaintiff Sets (a set is comprised of an injured child and corresponding parent or guardian), a significant majority, 232 Plaintiff Sets, were filed in county courts within the Southern District. (Pls.' Mot. at 6.) This factor weighs in favor of the transfer.

Plaintiffs also emphasize in their motion that the *first* Depakote Cases were filed in counties in the Southern District. The Seventh Circuit has declined to establish a rigid rule regarding cases which are first-to-file, stating, "[w]here a case is filed first should weigh no more heavily in the district court's analysis than the plaintiff's choice of forum

8

in a section 1404(a) calculation." *Research Automation Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010). Therefore, this factor is considered in Plaintiffs' motion, but in no way dispositive. It simply tips the balance slightly in favor of the Southern District.

Plaintiffs point out that beyond the choice of forum and the first-filed cases, the convenience factors are neutral with respect to the transfer. As the events at issue, including the prescriptions and alleged injuries and damages, occurred in areas throughout the United States, one district is not more appropriate than the other in terms of the situs of material events. The locations of proof is another neutral factor, as most evidence will be digital and, therefore, easily transferred between districts. "[D]ocumentary evidence is readily transferable and transporting it generally does not pose a high burden upon either party." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009) (citations omitted).

The fourth factor to consider is the convenience of the witnesses, which is generally considered to be of primary importance. *See Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998). Plaintiffs also state this factor is neutral to the issue of transfer. (Pls.' Mot. at 9.) The convenience of the party witnesses, including experts, treating physicians, and Abbott's employees, is not critical to this analysis. *See Bullard v. Burlington N. Santa Fe Ry.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). This factor is neutral to the issue of the transfer.

The final factor considered is the relative convenience of the parties. This factor weighs against the transfer. Abbott is headquartered in the Northern District, and it would be easier and more convenient for Abbott to try the case in this District. However, since the majority of the Depakote Case plaintiffs have been identified to have filed in courts in the Southern District, this factor weighs only slightly against the transfer to the Southern District.

Considered in whole, the private interest factors weighs slightly in favor of the transfer to the Southern District.

*Interest of Justice*

In analyzing the interest of justice, the appropriate analysis focuses upon traditional notions of judicial economy, the speed at which cases proceed to trial, and the courts' familiarity with applicable law and desire to resolve controversies in their locales. *TIGS Ins., Co. v. Brightly Galvanized Prods., Inc.,* 911 F. Supp. 344, 346 (N.D. Ill. 1996).

When analyzing the speed at which cases proceed to trial, courts consider the median number of months from filing to disposition, as well as the median number of months from filing to trial. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 837 (N.D. Ill. 2004). The median time from filing to disposition of a civil case is 6.5 months in the Northern District and 10.5 months in the Southern District. *See* Comparison of Districts Within the Seventh Circuit – 12 Month Period Ending September 30, 2012, at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagement Statistics/2012/comparison-districts-within-circuit-september-2012.pdf&page=7. The

median time from filing a civil case to *trial* is 31.2 months in the Northern District and 23.7 months in the Southern District. *Id.* These numbers are not entirely dispositive, as it appears that disposition of a case is, on average, slightly faster in the Northern District; but, the median time from filing to trying a civil case is slightly better in the Southern District. It should be noted, however, that significantly more cases are filed in the Northern District than the Southern District. This information, coupled with Plaintiffs' assertion that discovery is "significantly more advanced in the Southern District," favors transfer to the Southern District. (Pls.' Mot. at 11.)

Whether transfer of venue is proper also depends in part on a court's familiarity with applicable law. Plaintiffs do not address this factor, likely because it is neutral as to the issue of the transfer, as any issues of underlying Illinois state law and federal law could be competently addressed by the Court in either District.

Finally, the desire of a court to resolve issues in its own locale also cuts both ways. The Northern District has an interest in resolving issues of its residents, the Plaintiffs who filed here. The Southern District also has a similar interest. This factor weighs neither for nor against transfer.

Considering the provisions of Section 1404(a) regarding transfer discussed above, although both venues would be proper, the transfer to the Southern District is appropriate. Therefore, Plaintiffs' Motion to Transfer to the Southern District of Illinois is granted.

## CONCLUSION

In the interest of justice and fairness, as well as the sake of convenience, Plaintiffs' Motion to Transfer Venue [64] to the Southern District of Illinois is granted. This same rationale applies to *Clay v. Abbott Laboratories Inc.*, Case No. 12-cv-3824; and Plaintiffs' Transfer Motion [15] in that case is also granted.

Date: <u>February 6, 2013</u>

                                          JOHN W. DARRAH
                                          United States District Court Judge